(No. 21537.—

THE PEOPLE *ex rel.* Irene Mereness, Petitioner, *vs.* THE BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 35 *et al.* Respondents.

*Opinion filed July 26, 1932.*

ALLAN J. CARTER, (I. T. GREENACRE, THOMAS MASON, and E. C. AUSTIN, of counsel,) for petitioner.

AMOS H. WATTS, for respondents.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The relator, Irene Mereness, by leave of this court filed an original petition in this court in the name of the People of the State of Illinois for a writ of *mandamus* to compel the respondents, the board of education of school district No. 35 in Cook county and the president and members of said board, to issue and deliver to her an order on the township treasurer of township 42, range 13, in Cook county, for $280, the amount due her as wages for services rendered as a school teacher in said district. The respondents filed a demurrer to the petition.

The material facts alleged in the petition are the following: The respondents are the board of education of school district No. 35, Cook county, Illinois, and the duly elected, qualified and acting president and members of the board of education aforesaid, and said school district has a population of more than 6000 and less than 7000. The relator was em-

ployed by the board of education as a school teacher for the district for a period of one year, commencing September 1, 1931, and has been continuously since said date, and still is, a teacher in the public schools of the district, has had, and still has, a teacher's certificate, has rendered satisfactory services as a teacher, and has regularly furnished all schedules when and as required by law. The budgets and appropriations for the school district for the fiscal years 1931 and 1932 were made and adopted by the board of education and included the aggregate amount of money to pay the salaries and wages of school teachers according to their respective contracts, including the wages of relator. The annual tax levy for the amounts included in the budgets of the district for the fiscal years 1931 and 1932 was passed by the board and duly certified to the county clerk in apt time and the county clerk extended the tax levy for 1931 on the taxable property in the district, and the taxes so levied are still in course of collection. On June 2, 1932, the relator made a demand in writing on the board of education that it pay to her the sum of $280, which was due her for services rendered as a teacher in the schools of the district for the last completed month of teaching according to the terms of her contract of employment, and to that end that the board issue and deliver to her an order on the township treasurer for that amount for wages as a teacher. At a meeting of the board of education held on June 2, 1932, the board adopted a motion which provided that "inasmuch as there were no funds in the treasury and said order could not be paid, although the amount of the demand is correct, that the demand be refused."

It is also alleged that the General Assembly in special session, on April 26, 1932, passed an act amending section 154 of the Revenue act of 1872 by adding thereto a provision that the taxes for educational purposes of any school district might be collected in orders or warrants payable out of the educational fund for wages of teachers and

other employees, which act was approved by the Governor and went into force and effect on May 2, 1932; that thereafter attorneys who were prominent specialists in passing upon the validity of issues of municipal bonds and municipal and school tax anticipation warrants rendered an opinion to the comptroller of the city of Chicago, which came to the attention of the board of education and the relator and which opinion referred to said act of the General Assembly and said: "We can think of no method at the present time by which this situation can be worked out satisfactorily so that we can approve tax anticipation warrants. It looks very much as though educational financing of school districts hereafter will have to be carried on by the issuance of teachers' orders." It is further alleged that at its meeting of June 2, 1932, the board of education adopted a resolution which is set out in full in the petition. That resolution by its preambles refers to the law authorizing the issuance of tax anticipation warrants by school districts and recites that said district had issued such warrants in the amount of $100,000, which were unpaid, and must issue such warrants in an amount in excess of $140,000 in order to procure funds with which to keep the schools of the district in operation for the balance of the present term and for the school term beginning in September. It refers to the act of the General Assembly amending section 154 of the Revenue act of 1872 and the law requiring the wages of school teachers to be paid monthly by orders on the township treasurer, and recites that by reason of the amendment of section 154 of the Revenue act of 1872 the issuance of orders for the payment of teachers' wages when there is no money in the hands of the treasurer to pay them would deplete the source of payment of tax anticipation warrants and render it impossible for the district to sell additional tax anticipation warrants. By the resolution the board of education declared that it would not, when tax anticipation warrants of the district were outstanding, deliver any orders

for the payment of wages or salary of teachers unless there was money in the hands of the treasurer with which to pay the orders at the time they were delivered. It is further alleged in the petition that the percentage of taxes levied that has been collected has decreased from year to year during the last several years, and the marketability of tax anticipation warrants has decreased to such extent that at times it has been impossible to sell such warrants, and that the inability of the board of education to sell such warrants forced the board to close the public schools of the district for a period of two weeks in January, 1932; that the act of May 2, 1932, amending section 154 of the Revenue act of 1872, is unconstitutional and void because it impairs the obligation of contracts by impairing the lien of outstanding tax anticipation warrants and will impair the lien and value of tax anticipation warrants hereafter issued by the school district against the tax of 1931 levied for educational purposes and also such warrants as may be issued against such taxes for 1932, which taxes, it is alleged, have not yet been levied, and also because the amendatory act amends and nullifies the law authorizing the issuance of tax anticipation warrants by school districts, in violation of section 13 of article 4 of the constitution of 1870.

Section 123 of "An act to establish and maintain a system of free schools," approved June 12, 1909, provides that in all school districts having a population of not fewer than 1000 population and not more than 100,000 and not governed by special acts there shall be elected a board of education, to consist of a president and six members and three additional members for every additional 10,000 inhabitants. Section 127 of that act provides that boards of education shall have all the powers of school directors and be subject to the same limitations. Section 118 of the act provides that directors shall pay the wages of teachers monthly, and that upon the receipt of a schedule, properly certified, the directors shall forthwith issue and deliver to the teacher an

order on the township treasurer for the amount named in the schedule. Section 81 of that act reads as follows: "The township treasurer shall pay out no funds of any school district except upon an order of the board of directors, signed by the president and clerk, or by a majority of the board. When an order issued for the wages of a teacher is presented to the treasurer and is not paid for want of funds, the treasurer shall endorse it over his signature, 'not paid for want of funds,' with the date of presentation, and shall make and keep a record of such endorsement. Such order shall thereafter bear interest at the rate of six percentum per annum, until the treasurer shall notify the clerk in writing that he has funds to pay such order, and the treasurer shall make and keep a record of such notices, and hold the funds necessary to pay such order until it is presented. Such order shall draw no interest after notice is given to the clerk." Section 116 of the act prescribes the form of orders to be issued by school directors, and provides that no order shall be issued, except for teachers' wages, unless at the time there are sufficient funds in the hands of the treasurer to pay it.

From the allegations of the petition filed by the relator, which are admitted by the demurrer to be true, it appears that there was due and owing to the relator from the school district $280 as teacher's wages for one month's services as a teacher in the schools of the district; that she had furnished all schedules required of her and had complied with all laws concerning teachers in public schools and with all the rules and regulations of the board of education of the district concerning conduct and efficiency; that she had demanded of the board of education that it issue and deliver to her an order on the township treasurer for the amount so due her, and that the demand was refused for the sole reason that there were no funds in the hands of the treasurer to pay the order if it were issued and delivered to the relator. Under this state of facts the relator

had, by the provisions of the statute above referred to, a clear right to have such order issued and delivered to her by the board of education, and it was the duty of such board to issue and deliver such order to her notwithstanding the fact that there were no funds in the hands of the treasurer to pay it, unless the amendment of section 154 of the Revenue act of 1872 by the act of May 2, 1932, made such a change in the law as justified the board of education in refusing to issue and deliver to the relator the order demanded by her. This is not disputed by the respondents, but they contend that the amendatory act did change the law to such an extent that they were justified in refusing to issue the order demanded by relator and in refusing to issue and deliver any orders for teachers' wages when there were no funds in the hands of the treasurer to pay such orders, because such act, by making orders for teachers' wages a medium with which to pay taxes levied for educational purposes, would have, if such orders were issued and delivered, the practical effect of depleting the fund against which tax anticipation warrants had been issued and of making it impossible to sell tax anticipation warrants in the future to raise funds with which to keep the schools of the district in operation.

Section 154 of the Revenue act of 1872, by the act of May 2, 1932, was amended by adding thereto a proviso or an amendment, and the said section as so amended now reads as follows:

"Sec. 154. The county revenue shall be collected in gold and silver coin, United States legal tender notes, current national bank notes, county orders and jury certificates, and in no other currency. The revenue for State purposes shall be collected in gold and silver coin, United States legal tender notes, current national bank notes and auditors' warrants, and in no other currency. The revenue for city purposes shall be collected in gold and silver coin, United States legal tender notes, current national bank notes, city comp-

trollers', city auditors', or clerks' warrants or orders on the city treasurer, and in no other currency. State taxes levied for any special purpose, other than to defray the ordinary expenses of the State government, shall be collected in gold and silver coin, United States legal tender notes, current national bank notes, and in no other currency. All other taxes shall be collected in gold and silver coin, United States legal tender notes and in current national bank notes, and in no other currency unless otherwise specially provided for: *Provided, however, that the taxes for the educational purposes of any school district may also be collected in the orders or warrants payable out of the educational fund for the wages of teachers and other employees of the board of education issued under the provisions of section 81 or section 135 of 'An act to establish and maintain a system of free schools,' approved June 12, 1909, as amended, whichever such section is applicable."* Said amendment of section 154 above quoted is printed in italics.

It is the contention of the relator that the amendatory act aforesaid is invalid because it impairs the obligation of contracts by making teachers' orders acceptable in payment of taxes for educational purposes, which will operate to deplete the fund out of which tax anticipation warrants theretofore issued were payable. The last taxes levied by the school district before said act went into effect were the taxes for 1931. Those taxes had been levied and extended when the act was passed and tax anticipation warrants had been issued against such taxes. It is apparent that if orders for teachers' wages were issued and used to pay the taxes against which the tax anticipation warrants had been issued, the money collected in payment of such taxes might not be sufficient to pay the tax anticipation warrants. The act of May 2, 1932, does not, however, by its terms purport to apply to taxes levied and extended before its passage, and it seems clear that it was not intended, and should not be construed, to apply to such taxes. It is a well established

and recognized rule that a statute is to be given a prospective operation, only, unless the legislative intention that it should have a retrospective operation is manifested by the most clear and unequivocal language. *People* v. *Thatcher,* 95 Ill. 109; *Gage* v. *Nichols,* 135 id. 128; *Richardson* v. *United States Mortgage Co.* 194 id. 259; *Eddy* v. *Morgan,* 216 id. 437; *People* v. *Foreman,* 296 id. 487.

Section 117 of the Schools act provides as follows: "When there is no money in the treasury of any school district of this State, whether governed by either or both the general school laws, or any special charter, to defray the necessary expenses of the district, the directors, board of education or board of school inspectors, as the case may be, may issue warrants, or may provide a fund to meet said expenses by issuing and disposing of warrants, drawn against and in anticipation of any taxes levied for the payment of the necessary expenses of the district, either for educational or for building purposes, as the case may be, to the extent of seventy-five per cent of the total amount of the tax so levied. Such warrants shall show upon their face that they are payable solely from such taxes when collected, and shall be received by any collector of taxes in payment of the taxes against which they are issued, and such taxes shall be set apart and held for their payment.

"Every warrant issued under the provisions of this section shall bear interest, payable only out of the taxes against which it is drawn, at a rate not exceeding six percentum per annum, from the date of its issuance until paid, or until notice shall be given by publication in a newspaper, or otherwise, that the money for its payment is available, and that it will be paid on presentation."

Section 135 of the Schools act, to which reference is made in the amendment of May 2, 1932, is only applicable to boards of education in cities exceeding 500,000 inhabitants. The above sections of the act to which we have made reference may be found in chapter 122 of Hurd's Statutes

of 1921, Smith's Statutes of 1931, and Cahill's Statutes of 1931. Said sections have the same number in all three of the volumes of the statutes.

It is clear that under the allegations of the petition, which are admitted by the demurrer of the respondents, the relator is entitled to have the respondents issue and deliver to her an order on the township treasurer for $280 for wages earned by her as a school teacher in May, 1932. Such right is a vested right in her, given by the provisions of the School law. Such order, if issued and delivered to her, could not be used to pay taxes levied by the school district for 1931 against which tax anticipation warrants had been issued. The township treasurer could not have legally paid the order demanded by the relator, if it had been issued and delivered to her, out of money collected from the tax levy of 1931 against which tax anticipation warrants had been issued, until sufficient funds from such tax levy had been set aside by him to pay such tax anticipation warrants, as provided by section 117. It was also the right of the relator, under section 81, to present such order, when delivered to her, to the treasurer and to have him endorse it, "not paid for want of funds," with the date of presentation, and make and keep a record of such endorsement, and to give notice in writing when he has funds to pay such order, as provided by said section. The holders of the tax anticipation warrants issued against the levy of 1931 clearly had a vested right to have such warrants paid out of the first moneys collected from that assessment, and it was the duty of the township treasurer to receive the taxes collected out of the levy and to set apart and hold the same for the payment of such warrants until all of the warrants had been paid by him, as provided by section 117. That section provides that such warrants shall show upon their face that they are payable solely from such taxes against which they are issued, when collected, and it is the duty of the treasurer to safeguard the rights

of the holders of those warrants, as provided by section 117. It is apparent, therefore, that the refusal of the board of education to issue to the relator the order demanded by her was not justified on the ground that such order, if issued and delivered to her, might operate to interfere with or hinder the holders of the tax anticipation warrants theretofore issued, in collecting the money due on such warrants. It is also true that the board of education will have the right to issue and sell other tax anticipation warrants payable out of the levy of 1931, and that all of the warrants so sold, and the holders of such warrants, will have the same protection as the holders of the warrants sold prior to the enactment of said amendment and payable out of the taxes levied in 1931, provided that the sum total of all the warrants sold does not exceed seventy-five per cent of the total amount of tax levied, as provided by section 117. This is so because the amendment of May 2, 1932, does not apply to or in any way affect the tax levy of 1931 or tax warrants issued against the levy, as heretofore indicated.

Orders for teachers' wages are required to be issued monthly whether or not there are any funds in the hands of the treasurer to pay them, and the taxes for educational purposes may be collected or paid in the orders or warrants payable out of the educational fund for the wages of teachers, etc. But the question of what shall be the law is a legislative question, and the General Assembly, without doubt, has the right and power, by proper legislation, to prescribe the medium in which taxes shall be paid, so long as such legislation does not violate some express provision of the constitution. (*Billings* v. *Riggs*, 56 Ill. 483.) The legislature has made it the duty of school directors and boards of education to issue orders for teachers' wages monthly, and school directors and boards of education cannot legally refuse to issue and deliver such orders because by subsequent legislation such orders have been declared to be a proper medium for the payment of taxes levied for edu-

cational purposes. The constitutional mandate to provide a thorough and efficient system of free schools is directed to the General Assembly, and a board of education has no right to ignore any legislative provision and refuse to comply therewith unless it can base its action on constitutional grounds. If the legislation in question should prove to be bad policy, the remedy is by a change in the law by the General Assembly.

The fact that the amendatory act, by allowing orders issued to pay teachers' wages to be used to pay taxes levied and extended after it went into effect, may operate to decrease the source of payment and the salability of tax anticipation warrants that may be issued against such taxes does not make the act invalid because impairing the obligation of contracts. Any person purchasing such tax anticipation warrants that may be issued against the tax levy made after said amendment is in full force and effect will make such purchase with full notice that the taxes against which they are issued may be paid with teachers' orders. (*Schewe* v. *Glenn,* 302 Ill. 462.) Tax anticipation warrants are not contracts and do not add to the indebtedness of a school district or municipality which has issued them. No valid enactment of the legislature that may operate to defeat the collection of such warrants in whole or in part can be said to be legislation that impairs the obligation of a contract. *Booth* v. *Opel,* 244 Ill. 317.

It is contended by the relator that the amendatory act violates section 13 of article 4 of the constitution in that it embraces a subject not expressed in the title of the act, and operates to amend section 117 of the Schools act and does not set out the latter section in full. The title of the amendatory act of May 2, 1932, is "An act to amend section 154 of 'An act for the assessment of property and for the levy and collection of taxes,' approved March 30, 1872, as amended." Section 154 as amended is set forth in full in the amendatory act. The only change made in said sec-

tion by the amendatory act is the addition of the proviso quoted above in this opinion, that taxes of school districts for educational purposes can be paid in warrants issued to pay the wages of teachers and other employees. Section 154 of the Revenue act of 1872, before the amendment, set forth and provided the kinds of money, orders and certificates in which taxes could be collected. The proviso added by the amendatory act relates to the same subject as was covered by the section before the amendment, and that subject is embraced in the title of the Revenue act. The amendatory act does not, therefore, embrace a subject not expressed in its title. *Proviso High School* v. *Oak Park High School,* 322 Ill. 217.

The provisions of section 154 of the Revenue act of 1872 as amended by the amendatory act of May 2, 1932, does not purport to amend section 117 or any other section of the Schools act. Section 154 of the Revenue act of 1872 as amended by the amendatory act is complete in itself and provides the medium in which taxes may be collected. While the added provision of section 154 as amended may in some degree affect the salability of tax anticipation warrants issued under section 117 of the Schools act, still section 117 is not amended in anywise by the amendment of section 154 of the Revenue act. The amendatory act of May 2, 1932, does not contravene the provision of section 13 of article 4 of the constitution that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." *People* v. *School Directors,* 267 Ill. 172; *Tennant* v. *Joerns,* 329 id. 34.

The demurrer of the respondents to relator's petition for *mandamus* is overruled. The writ of *mandamus* is awarded.

*Writ awarded.*